Well, our last case for the morning, Elizabeth Mejia-Hernandez v. Pamela Bondi. You may proceed. Good morning, Your Honors. Budzinski Four Petitioners. I'm not going to spend much time on the first issue today, but we believe Ortiz-Santiago was wrongly decided that the defect in the notice to appear is a jurisdictional issue, but I understand the court's been firm in holding otherwise, and I won't belabor the argument. Turning to asylum and withholding of removal, there are four issues, whether there is sufficient harm to constitute past persecution, nexus to a protected ground, well-founded fear of future persecution, and internal relocation. Beginning with sufficient harm, the agency concluded there was not sufficient harm here because the harm to family members was not a means to threaten Mejia. However, NLA and Cesar's statements compel a conclusion otherwise. NLA tells us that harm to family members can be harm to the applicant. That is an announcement, we are targeting your family. Here, that can be inferred from the harm to various family members. We have six murders and one injury resulting in someone being in a wheelchair. All of these people are in Mejia's family, and Cesar announced that this was his aim. When he killed Arturo, he yelled, I'm going to finish off all these sons of bitches, all these dogs, I'm going to kill all of them, these pieces of garbage, none of them are going to remain. Contextually, them refers to Mejia's family. Turning to protected ground, the agency concluded the motive here was not the particular social group, nuclear family, but instead a personal dispute. The record compels a conclusion otherwise because we can have more than one central reason for the harm. If we look at just the threat of past persecution, and we look at the threat that you just provided for us, what do we have when we're looking just at past persecution before we get to the second element of whether or not it's a nexus? What do we have here that demonstrates or on the record that your Mrs. Hernandez was threatened, or is this a derivative prosecution claim? I'm sorry, derivative persecution claim. Based on the harm to her family members? I'm asking. Is that what you mean by derivative? Yes, that would be the nexus there, would be based on the harm to her family members. That would be the circumstantial evidence. No, I want to know what past persecution has the petitioner experienced. That's the first element. Correct. We are arguing that under NLA, harm to family members can be part of the persecution or harm to the applicant because it announces... NLA recognizes that that's possible. In NLA, the NLA was directly threatened. Correct. And so my question to you is, what evidence do we have of past persecution in this case? We understand that it's possible by threats. And what do we have here? We have the statement of Cesar when he tells them that he's going to kill all of them. That's the threat here. So your view is there doesn't have to be direct personal communication between your client and the person emitting the threat, is that right? Correct. Can I turn your attention or invite your attention to something right around the same area, if I may, and that is the question of there having been, there was after each of these murders apparently an investigation, no arrest, but an investigation. We also have the point that your client apparently never told the authorities that she and her family members suggested this Cesar as a... How do we deal with that, with those considerations? So that goes to whether Honduran authorities are able and willing to protect Mejia. That was an issue not decided below, so we would need to remand to address that. I see. In other words, the district court never said that the Honduran authorities are able and willing to deal with this. Yes, Your Honor, the agency in this case, correct. Could you focus on the question of internal relocation? Yes. Mr. Budzinski, since we've got, as I understand it, a record here of at least eight years or so of safe relocation and the petitioner's family, at least her nuclear family, remain safe. Correct, Your Honor. So I do not view this as safe relocation for two reasons, and they're both related to her attempts to relocate. Each time, there was another threat. After the first relocation, they found a note under the door to her home that said, I already found you, dogs. I think notably there, it uses the same language as the first threat, dogs. After the second relocation, this is when a man matching the description of Cesar's brother was found looking for Mejia with a weapon. Under those circumstances, our argument is that relocation failed and that her last effort was to leave the country entirely and flee to the United States. Can I ask you a broader question here? And let's go back to Romeo and Juliet, the Montagues and the Capulets. If I understand your theory here correctly, both families would be entitled to asylum in the United States. Yes, that is true. I think if both of them applied for asylum in the United States, that might be difficult to show future persecution or a change in circumstances because if they're all here in the United States, there would be no one in Honduras to threaten them. So it's interesting how that would work out, but yes, I think in theory, whoever were here applying for that would have an argument. Can the other families show there's a present threat of persecution? I think it would be more difficult for them. I think there was one incident after the dog when one of the family members attacked the Ramirez family with a machete and he ultimately ended up dying. That person in the Mejia family turned themselves in. I don't think there's been any violence on behalf of the Mejia family since that incident. So it would probably be a more difficult case for the Ramirez family. So has she experienced any harm since 2006? Not since, not personally, except for the man seen looking for her that matched the description of Cesar Ramirez's brother. But other family members did. And so, go ahead, Judge Ripple. Excuse me, please. How does that rise to the level of persecution? The 2018, someone looking for Mr. Hernandez. So the incidents contributing to a finding of persecution need to be considered aggregately. So we would ask the court to consider the earlier harm, the earlier deaths along the way. You just told me she didn't have any harm since 2006. Personally. But we've argued that the harm to her family members can be considered as part of the harm to her because the entire family was threatened, including her. She's been on the run, hasn't she? Until she got to the United States. I don't know what her situation is now. But she was on the run. Correct, Your Honor. Are you sure you want to concede she had not been persecuted since 2006? I mean, thank you, Your Honor. She has been on the run. She has been trying to avoid harms. She's been threatened those two occasions, once with the note under the door. Single mother, two children, and she's been on the run. That's correct, Your Honor. Thank you. And we don't know, but apparently the police have not been terribly helpful in protecting this family. Yes, Your Honor. If I may, I reserve the remainder of my time for rebuttal. Thank you. Thank you, Your Honors, and may it please the Court. My name is Brandon Callahan on behalf of the Attorney General. Your Honors, I think, you know, as we talk about all these various parts of this case, the thing I want to make sure we all remember is how many findings of fact all these aspects represent. The agency made several separately dispositive findings of fact. And so this Court would have to find that, you know, either two or three of these findings or two separately dispositive findings of fact on past persecution or three on the concept of well-founded fear of future persecution need to be overturned by substantial, that, excuse me, that the record compels the finding that those... You know, I noticed that language. It's in one of our unbox. It kind of reminded me of a philosophy professor I said, who had, who didn't like one particular writing that we had to look at. He said to us in French, c'est la poésie et c'est tout. That's poetry and that's all. Is that really a standard that we can apply that poetic language from our unbox? I mean, that's, you know, there'd be no case that we could ever pass it. Well, respectfully, Your Honors, I think that, I think all of the other circuits use the substantial evidence standard and it's more... You use substantial evidence, but not the language you quoted from our unbox. Yes, that the record compelled the finding. Isn't that language really at intention with the language in, that all the other circuits use? No, Your Honor, I would say no. The Ninth Circuit in particular handles a lot of immigration cases and they use the record compels the standard as another way of stating the substantial evidence standard.  Yes, Your Honor, and respectfully, the Department of Justice does not always prevail in cases on the substantial evidence standard. So I don't necessarily agree that no case could ever satisfy. That brings me to my next point. As I went through the case, did my own work up on it, I had difficulty seeing what evidence there was that this woman didn't have a substantial fear of persecution if she returned to Honduras. Well, Your Honor, I think that it's very possible that she has a real substantial fear of future persecution. There's more to the analysis than just whether or not she fears persecution. If we're talking about the concept of past persecution and the presumption that that conveys, then... Let's give you the benefit of the doubt on that one, okay? And let's talk just about future persecution. Okay, sure. So if we're talking about future persecution, then she has to show both a subjective fear, which I agree she likely has, and an objectively reasonable probability of future persecution. And to Your Honor's point, there really isn't much evidence in the record that she faces an objective... I think the phrase that this Court has used is a reasonable probability of harm in the future. Steve says, I'm going to kill all of your family members. Yes, Your Honor. And then in 2011, a family member dies, is murdered. 2014, two are murdered. 2017, another is murdered. And in 2018, after relocating, someone that fits the description of who she suspects as murdering her family members is now looking for her. Yes, Your Honor. I take your point well. I think that Judge Hamilton's earlier question to my colleague is appropriate. It's not clear that Cesar did commit all these murders. There was an investigation. The family never reported their suspicions. Certainly Cesar was not arrested or convicted for any of these things. Nobody was, right? I'm not sure about that, Your Honor. I believe you're correct, but the record is... It seemed to be the drift of the entire adventure. Yes, Your Honor. Suppose... What I've been trying to do, Mr. Calhoun, is separate out these different points of the analysis. Yes. And on the persecution point, suppose that Cesar had been a police officer, a government agent, or a member of a tolerated paramilitary organization in Honduras and murdered the grandfather and then the series of cousins and made the explicit threats. Do you think that would be compelling evidence of persecution of the family? Well, I want to first make sure that I'm keeping all the elements we're talking about straight. Are we talking about whether or not Ms. Mejia Hernandez, in your hypothetical, would have experienced harm rising to the level of persecution? Or are we talking about the question of the nexus between whatever harm she may have experienced? We've said family membership can be a sufficient nexus, right? Yes. And what I'm trying to put aside here is a question that apparently the Board did not decide. And that is whether the government of Honduras was unwilling or unable to step in here to protect the family. And just focus on the harm actually experienced by the family as a group and the threat and the risk of future harm being inflicted. Assume it's not a purely private vendetta. Assume that it's coming from the government. I would think we would say that's pretty strong evidence of past persecution and a very solid foundation for fear of future harm. Yes, Your Honor. If we took the harm that happened to the family as sufficient harm to rise to the level of persecution. And it wouldn't? I'm trying to think of a case in which we would say it did not. Well, Your Honor, I think respectfully in this situation, this case is pretty distinguishable from something like NLA where the petitioner was targeted to communicate a threat. I'm sorry, excuse me. Let me rephrase that. The petitioner was targeted and the way that the persecutors communicated their threat was through targeting other family members. It was part of the threat to the petitioner. That's not what we have here. I don't know how else you would read this. Well, Your Honor, nothing in what Cesar said or has done was meant to specifically target Ms. Mejia. No, it's everybody. Go back to the origins of asylum. We're not picking on individual Jews because of their individuality. We're picking on them because they're all Jews. Correct, Your Honor, but I think that the distinction here between this case and NLA is that in NLA, the family members were targeted as a means of targeting the particular individual petitioner. And that's not what we have here. This is a different case. To go back to Judge Pryor's earlier question, this is also not consistent with this court's case law about derivative persecution because derivative persecution, as I understand the court's decision, is more the claim that you experience harm because your loved one was harmed. I think the example that the court uses is if your child is killed. Gamini versus Holder, Your Honor. I believe that's the language that the court uses. And that is different than what we have here as well because she's not claiming that she has experienced real harm because her family members were killed. She's using the fact that her family members were killed as corroboration for the threat she faces. Is that unreasonable? No, Your Honor. It's not. But I think when we talk about the question of whether or not she's experienced harm rising to the level of persecution, we wind up back at Judge Pryor's question to my colleague, what harm has she experienced? And respectfully, I struggle to find some. She's not actually experienced any physical harm. She's never been directly threatened. She's never even been with any of the people who were harmed. So all we have is a statement she was told about and the fact that other family members have died she believes at Cesar's hand. But again, this is not like NLA where those people are being targeted to communicate a threat to her as part of the threat to her, I think, is the language the court used in NLA. This is different. There is just a personal dispute going on that has continued on for the last 20 years. And if I could get back to Your Honor's question about the objective likelihood that she'll be tortured, I would point out that it's been nearly 20 years since Cesar killed Ms. Mejia Hernandez's grandfather. She lived in Honduras safely for 12 of those years. She also relocated to La Playa for 11 of those years. She's not had any contact with Cesar ever. No one in her family has had any contact with him since at least the last cousin was killed in 2017. Quite frankly, there's not even really any evidence that Cesar is still alive. So there is evidence that she could face a threat, but the question becomes does the record compel the finding that she faces a reasonable probability of persecution in the future. But as I say, just wrapping up quickly, I think it's important to remember that even if you believe that she experienced harm rising to the level of persecution or you believe that the harm that she either experienced or fears in the future is on account of her family membership, there are other findings of fact that this Court also would have to overturn in order for Ms. Mejia Hernandez to succeed in this case. So if there are no further questions, the Attorney General would ask that the Court deny the petition for review. Thank you. Just two points, Your Honors. On future persecution, this is not necessarily a demanding showing. The Supreme Court has said maybe even a 1 in 10 chance is enough to establish a well-founded fear of future persecution. And on the last point a respondent was discussing about it being 20 years, our merits hearing was on December 2019. That's when the record closed. Mejia came to the United States in June 2018. So a lot of this time that respondent is relying on, we cannot rely on unless we remand this case and the record gets reopened and Mejia can discuss what has happened since her hearing in 2019. If there are no further questions. Thank you. We'll take the case under advisement. Those are all of our cases for this morning. Court is in recess. Thank you.